IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MI-BOX OF NORTH FLORIDA, LLC,            CASE NO. 3:23-CV-01497-BJD-PDB
a Florida limited liability company,

    Plaintiff,
vs.

MI-BOX HOLDING COMPANY, an
Illinois company, and
MI-BOX FLORIDA, LLC, a
New Hampshire limited liability company,

    Defendants.
_____/

### MI-BOX OF NORTH FLORIDA, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANTS' MOTIONS TO TRANSFER VENUE

Plaintiff MI-BOX of North Florida, LLC ("MI-BOX of North Florida"), by and through undersigned counsel, hereby files this Omnibus Memorandum of Law in Opposition to Defendant, MI-BOX Florida, LLC's Motion to Transfer Venue Pursuant to 28 U.S.C. §1404(a) and Incorporated Memorandum of Law  [Dkt # 18], and Defendant MI-BOX Holdings Company's Motion to Transfer Venue and Incorporated Memorandum of Law [Dkt # 27], and in support thereof, states as follows:

**I.    INTRODUCTION**

On November 6, 2023, Plaintiff MI-BOX of North Florida filed suit in Florida State Court against Defendants MI-BOX Florida, LLC ("MB Florida") and MI-BOX Holdings Company ("MB Holdings") based on disputes that arose prior to the execution of the written dealership agreement (the "Dealership Agreement") between MI-BOX of North Florida and MB Florida, and the written Equipment Purchase and Trademark License Agreement (the "Equipment Agreement") between MI-BOX of North Florida and MB Holding. While the Dealership Agreement granted

MI-BOX of North Florida the exclusive right to establish and operate a MI-BOX dealership within the Florida counties of Duval and St. Johns (the "Exclusive Territory"), the Equipment Agreement obligated MI-BOX of North Florida to exclusively purchase the lift systems required under the Dealership Agreement from MB Holdings.

Because the Dealership Agreement and the Equipment Agreement constitutes a franchise under both federal and state law, and because Defendants did not properly comply with applicable state and federal law prior to the sale of the franchise in Florida, MI-BOX of North Florida sued Defendants for violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.203(3) (Count I), Fraudulent Inducement Against MB Florida (Count II), Violation of Florida Franchise Act, §817.416 (Count III), and Rescission (Count IV). On December 21, 2023, Defendants removed the state court case to this Court [Dkt # 1], and thereafter filed their respective motions to transfer.

Because the forum selection clauses in both the Dealership Agreement and the Equipment Agreement do not encompass the claims asserted by MI-BOX of North Florida in this action, and because *Atlantic Marine* does not apply to the facts of this case, Defendants' respective motions to transfer must be denied.

II. **ARGUMENT**

A. **Legal Standard**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 USCA § 1404(a). See also, *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49 (2013)(finding that Section 1404(a) is the proper basis for a court to consider a motion to transfer venue based on

enforcement of a forum-selection clause). The purpose of §1404(a) is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

However, the presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways: (i) the plaintiff's choice of forum merits no weight; (ii) a court should not consider arguments about the parties' private interests; and (iii) a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules. *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49 at 63–65. As such, a "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.*, at 63.

    **B.**    **Atlantic Marine does not apply to the facts of this case**

Defendants primarily rely on *Atlantic Marine* and its progeny to support their argument that the forum selection clauses contained in the Dealership Agreement and the Equipment Agreement require that this case be transferred to Illinois and New Hampshire, respectfully.

Unlike the facts presented in this case, all of the parties in *Atlantic Marine* were bound by a forum selection clause "which stated that all disputes between the parties 'shall be litigated in the Circuit Court for the City of Norfolk, Virginia, or the United States District Court for the Eastern District of Virginia, Norfolk Division.' " *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. at 53. However, *Atlantic Marine* did not address whether, in a multi-party litigation, a forum selection clause was enforceable where one or more of the parties were not bound thereby or, as here, were bound by different forum selection clauses. In those instances, courts both in this district and others have held that *Atlantic Marine's* presumption that "a valid forum-selection clause [should be] given controlling weight in all but

3

the most exceptional cases," *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. at 63, does not apply.

For instance, in *In re Rolls Royce Corp.*, the Fifth Circuit considered "what should a district court do when some, but not all, litigants are subject to a forum selection clause, and one of the parties to the clause files a motion to several and transfer its claims to the forum chosen in this contract." *In re Rolls Royce Corp.*, 775 F.3d 671, 673 (5th Cir. 2014). In responding to this question, the Fifth Circuit held that:

> A properly conducted section 1404 inquiry may well require a district court to send different parties to pursue the same suit in different districts, implicating concerns attending parallel lawsuits not present in *Atlantic Marine.* While *Atlantic Marine* noted that public factors, standing alone, were unlikely to defeat a transfer motion, the Supreme Court has also noted that section 1404 was designed to minimize the waste of judicial resources of parallel litigation of a dispute. The tension between these centrifugal considerations suggests that the need—rooted in the valued public interest in judicial economy—to pursue the same claims in a single action in a single court can trump a forum-selection clause.

*Id.*, at 679. Based on this holding, the Fifth Circuit stated that "the severance-and-transfer inquiry in situations where some but not all parties have entered into a forum-selection clause ought to go as follows: First, pursuant to *Atlantic Marine,* the private factors of the parties who have signed a forum agreement must, as matter of law, cut in favor of severance and transfer to the contracted forum. Second, the district court must consider the private factors of the parties who have *not* signed a forum selection agreement as it would under a Rule 21 severance and section 1404 transfer analysis. Finally, it must ask whether this preliminary weighing is outweighed by the judicial economy considerations of having all claims determined in a single lawsuit." *Id.*, at 681.

Although "[t]he Eleventh Circuit has not addressed this precise issue," *Arnold v. Everglades College, Inc.*, Case No. 4:20cv247-MW/MAF, 2020 WL 12188682 * 2 (N.D. Fla. November 15, 2020), other courts have. "Building on (the framework prescribed by) *Rolls Royce*,"

4

the Third Circuit "prescribe a four-step inquiry in which the reviewing court, whether the District Court in the first instance, or a court of appeal, will consider in sequence: (1) the forum-selection clauses, (2) the private and public interests relevant to non-contracting parties, (3) threshold issues related to severance, and (4) which transfer decision most promotes efficiency while minimizing prejudice to non-contracting parties' private interests." *In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 403-404 (3d Cir. 2017).[1] Courts, both in this district and others, have adopted the Third Circuit's approach in *Howmedica*. *See e.g.*, *Clausen v. Burns and Wilcox, LTD*, 2:19-cv-605-FtM-60NPM, 2020 WL 2425671 (M.D. Fla. May 12, 2020); *Sompo Japan Nipponkoa Insurance, Inc. v. CSX Transportation, Inc.*, 3:19-cv-1154-J-34PDB, 2020 WL 7074558 (M.D. Fla. March 3, 2020); *Arnold v. Everglades College, Inc.*, 4:20cv247-MW/MAF, 2020 WL 12188682, at *5 (N.D. Fla. November 15, 2020)("finding the Third Circuit's approach persuasive because it is in keeping with the underlying purpose of the *Atlantic Marine* decision, which is to enforce a valid forum-selection clause while also protecting the interests of the non-contracting party and the interests in judicial economy).

Irrespective of whether this Court elects to follow *Howmedica* based on the facts of this case, where there are different forum-selection clauses under which the other Defendant is not bound, the outcome remains the same. Defendants' motions must be denied because the forum-selection clauses simply do not encompass Plaintiff's claims, and because the forum-selection provisions should not be enforced based on "exceptional circumstances."

---

[1] The primary difference between the framework adopted by the Fifth Circuit's approach in Rolls Royce and the framework adopted in *Howmedica* is the inclusion by the Third Circuit of "an additional step …focused on whether there is anything mandating or prohibiting severance." *United State of America v. Calvary Construction Group, Inc.*, 3:23cv2982-TKW-ZCB, 2023 WL 3964752 (N.D. Fla. June 12, 2023).

5

C.  **The narrowly drafted forum-selection clauses in the Dealership Agreement and the Equipment Agreement do not encompass Plaintiff's claims**

The forum-selection clauses in the Dealership Agreement and the Equipment Agreement are identical, excepting only the stated venue in which the action against the two Defendants should be brought. MB of North Florida does not dispute that these forum-selection clauses are presumptively valid. Notwithstanding this admission, these provisions simply do not apply to Plaintiff's claims.

To determine if a forum-selection clause encompasses a particular type of claim, a court must look to its language. *Stiles v. Bankers Healthcare Group, Inc.*, 637 Fed.Appx. 556, 559 (11th Cir. 2016). At first glance, the forum-selection clauses' reference to "any disagreement" appears broad and all encompassing. However, when the forum-selection clauses are read in their entirety, it is clear that the term "any disagreement" refers only to the "Dealership Agreement" and "the rights of the parties hereunder…".

Anticipating this argument, MB Florida argues that "all of plaintiff's claims relate to the Dealership Agreement or the rights of the parties thereunder," [Motion, p. 7], in its attempt to apply the forum provision to the facts of this case. To support its argument, MB Florida (and MB Holdings) cites to *St. Francis Holdings, LLC v. Cynosure, Inc.*, 8:20-cv-1101-T-02AAS, 2020 WL 9601509, at *3 (M.D. Fla. September 23, 2020)(forum-selection clause provides that "[t]he Customer agrees to submit all disputes arising out of, or relating to, this Agreement to and to a court in Boston, Massachusetts"); *LeasePoint Funding Group, LLC v. Osteoporosis & Rheumatology Center of Tampa Bay*, LLC, 8:20-cv-2038-CEH-TGW, 2021 WL 3171980, at *2 (M.D.Fla. July 26, 2021)(forum-selection clause provided "[t]he Customer agrees to submit all disputes arising out of, or relating to, this Agreement to a Court in Boston, Massachusetts."); and *Artier LLC v. Carre D' Artistes SAS*, 17-80636-cv-Middlebrooks, 2017 WL 7732129, at *2

6

(S.D.Fla. November 20, 2017)(the forum selection clause provision provided "[b]oth Parties hereby expressly agree that any dispute relating to this Agreement shall be submitted to the exclusive jurisdiction of the Commercial Court of Aix en Provence, and governed exclusively by French law."). However, in each of these cases, the forum-selection clauses were broad in scope, and included such words as "arising out of" or "relating to". Because the forum-selection clauses in this case are narrow and do not include the magic words that would bring this dispute within the agreements' forum-selection clauses, the cases cited by Defendants simply do not apply.

Instead, this case is analogous to *Pelican Ventures, LLC v. Azimut S.p.A.*, No. 03-62119, 2004 WL 3142550 (S.D. Fla. July 28, 2004), a case that the *Artier LLC v. Carre D' Artistes SAS* court distinguished as follows:

> Plaintiffs cite *Pelican Ventures, LLC v. Azimut S.p.A.[]* where the court held that a FDUTPA claim was severable as it did not rely on the contract containing the forum selection clause and could stand independent of it. The *Pelican* court applied a two-step analysis: first it determined the scope of the forum selection clause, and then it determined whether certain counts were severable. The court noted that the forum selection clause at issue was "limited" and "only mandate[d] venue for matters <u>arising out of</u> the [contract]." *Id.* (emphasis added). The court found that the FDUTPA claim was based on representations made in a document that was not incorporated into the contract containing the forum selection clause. The court then concluded that the FDUTPA claim did not arise out of the contract containing the choice clause.

*Artier LLC v. Carre D' Artistes SAS*, 2017 WL 7732129, at *3 (internal citation omitted). Like the limited forum-selection clause in *Pelican*, the forum-selection clauses in the Dealership Agreement and the Equipment Agreement are narrow in scope and do not encompass the non-contractual claims raised by MB of North Florida in its Complaint, as none of those claims ultimately depend on the contractual rights of the parties. *See i.e.*, *Kaye v. Ingenio, Filiale De Loto-Quebec, Inc.*, 13-61687-CIV, 2014 WL 2215770, at *5 (S.D.Fla. May 29, 2014)(Fraudulent inducement is generally a tort independent from a breach of contract because it requires the

7

plaintiff to prove facts separate and distinct from the facts necessary to prove the breach of contract)(internal citations omitted); *Michael Shane Enterprises, LLC v. Courtroom Connect LLC*, 16-cv-80881-Middlebrooks, 2017 WL 3025980, at *8 (S.D.Fla. March 21, 2017)(the fraud that induces entrance into a contract is separate from the failure to perform that follows); *Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*, No. 17-cv-8987 (GHW), 2019 WL 1244294, at *15–16 (S.D.N.Y. Mar. 18, 2019) (holding that choice-of-law provisions, which require contracts "in all respects be interpreted, enforced, and governed" and "be governed by and construed in accordance with the laws" of a particular state, did not "cover tort claims"); *McBeth v. Porges*, 171 F. Supp. 3d 216, 224 (S.D.N.Y. 2016) (holding that the choice-of-law provisions at issue did not cover tort claims because "the provisions do not encompass the entire relationship between the contracting parties and are comparable to provisions that courts have held not to encompass such tort claims") (internal quotation marks omitted)

Based on this fact alone, the motions to transfer venue filed by each Defendant should be denied.

   **D.**  **Public and private interests neither support or weight against transfer**

The second factor of the analysis articulated in *Howmedica* requires the court to consider the private and public interests of the parties not bound by the forum selection clause. "Factors relating to the parties' private interests include 'relative cost of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses ... and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Atlantic. Marine,* 571 U.S. at 62 n. 6, quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n. 6 (1981). "Public-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies

8

decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law."

Given the different locations in which MB of North Florida and the Defendants do business, MB of North Florida takes no position regarding whether the private and public interests weights in favor of, or against, transfer.

### E. Defendants are indispensable to the outcome of this case, warranting against the enforcement of the forum-selection clauses

Where the first two steps " point different ways, then the court considers severance" to determine whether it will allow enforcement of the forum selection clause against only the contracting parties. *In re: Howmedica Osteonics Corp*, 867 F.3d at 404. Where a party is indispensable under Federal Rule of Civil Procedure 19(b), like here, severance is clearly disallowed.

Despite the Dealership Agreement and the Equipment Agreement being two separate agreements, "where two or more documents are executed by the same parties, at or near the same time, in the course of the same transaction, and concern the same subject matter, they will be read and construed together." *International Ship Repair & Marine Services, Inc. v. General Portland, Inc.*, 469 So.2d 817, 818 (Fla. 2nd DCA 1985); *see also*, *Clayton v. Howard Johnson Franchise Systems, Inc.*, 954 F.2d 645, 649 (11th Cir. 1992)(holding that two contracts should be construed together as a single franchise agreement because they were executed on the same date, involved the operation of related businesses, and because they contain numerous cross-references and other evidence that they are functionally intertwined, indicating that the parties contemplated that the two documents would be considered together). That is precisely the case here.

Based on the foregoing, this Court should construe both the Dealership Agreement and the Equipment Agreement as a single agreement, which will require the participation of each

9

Defendant, who are each indispensable to the outcome of this case. *HDR Engineering, Inc. v. R.C.T. Engineering, Inc.*, 2010 WL 2402908, at *2 (S.D.Fla. June 15, 2010)("Courts have recognized that a contracting party is the paradigm of an indispensable party.")(internal citations/quotations omitted).

      **F.    Judicial Economy, efficiency and the parties' interests outweigh any interest in transferring**

Under this remaining step, a district court exercises its discretion in choosing the most appropriate course of action, namely, whether it should retain the case in its entirety, transfer the case in its entirety, or sever certain parties or claims in favor of another forum. *In re: Howmedica Osteonics Corp.*, 867 F.3d at 405. While judicial economy is not the sole consideration for a district court facing a severance-and-transfer motion, it retains a cardinal role. *In re Rolls Royce Corp.*, 775 F.3d at 681.

Here, judicial economy and efficiency require that this case remain in this district. "To do otherwise will needlessly fracture this litigation and transform an otherwise fairly routine, localized business dispute into multidistrict litigation spanning the continental United States." *Rolls Royce*, 775 F.3d at 679-81; *Howemedica*, 867 F.3d at 405. "[T]o permit a situation in which two cases involving the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy, and money that § 1404(a) was designed to prevent." *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) (quoting *Cont'l Grain v. THE Barge FBL-585 & Fed. Barge Lines, Inc.*, 364 U.S. 19, 26 (1960)); *In re Bavaria Yachts USA, LLLP*, 575 B.R. 540, 563 (Bkrtcy.N.D.Ga. 2017)("A court should not incentivize that type of litigation strategy by enforcing a forum selection clause if it will unnecessarily place burdens on multiple courts and needlessly increase the cost of litigation.").

Furthermore, having this matter tried in both Illinois and New Hampshire risk inconsistent judgments. For example, while the Court in Illinois could find the existence of a franchise relationship between MB of North Florida and MBH, the New Hampshire court could hold that the relationship between MB of North Florida and MB Florida is one of manufacture/dealer. And while MB of North Florida recognizes those decisions that have allowed a case to proceed in two different districts, those cases do not involve a situation in which the contracts at issue, like here, should be read as a single agreement. *Cf. St. Francis Holdings, LLC v. Cynosure, Inc.*, 2020 WL 9601509, at *5 ("Plaintiffs' claims against Cynosure are based on a sales agreement, while Plaintiffs' claims against MMP Capital are based on a financing agreement. Although these contracts are related, they present different issues.").

### III.   CONCLUSION

Because the forum-selection clauses are narrowly drafted and do not encompass the claims Plaintiff has asserted in its Complaint, and because exceptional circumstances exist, the forum-selection clauses contained in both the Dealership Agreement and the Equipment Agreement should not be enforced.

**WHEREFORE**, Plaintiff MI-BOX of North Florida, LLC respectfully requests that Defendant MI-BOX Florida, LLC's Motion to Transfer Venue Pursuant to 28 U.S.C. §1404(a) and Incorporated Memorandum of Law [Dkt # 18] and Defendant MI-BOX Holdings Company's Motion to Transfer Venue and Incorporated Memorandum of Law [Dkt # 27], be denied, and for such other relief that this Court deems just and fair.

Dated: February 1, 2024

        Respectfully submitted,

        **ZARCO EINHORN SALKOWSKI, P.A.**
        *Counsel for Plaintiff*
        One Biscayne Tower
        2 S. Biscayne Blvd., 34th Floor
        Miami, Florida 33131
        Telephone: (305) 374-5418

        By: */s/ Robert F. Salkowski*
        **ROBERT F. SALKOWSKI (FBN 903124)**
        E-mail: rsalkowski@zarcolaw.com
        Email: acoro@zarcolaw.com
        **JACKY BEDA (FBN 1003619)**
        E-mail: jbeda@zarcolaw.com
        E-mail: agarcia@zarcolaw.com
        E-mail: eservice@zarcolaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on February 1, 2024, a true and correct copy of the foregoing was served via electronic mail upon the following: Samuel J. Horovitz [shorovitz@rtlaw.com] and Angelo M. Patacca, Jr. [apatacca@rtlaw.com] ROGERS TOWERS, P.A. 1301 Riverplace Blvd., Suite 1500, Jacksonville, FL 32207; Benjamin B. Folsom [Bengamin.folsom@mclane.com] MCLANE MIDDLETON, 900 Elm Street, 10th Floor, Manchester, NH 03101; and Helen H. Albee [helen.albee@atritt.com and karen.farber@atritt.com] TRITT & ASSOCIATES, P.A. 707 Peninsular Place, Jacksonville, FL 32204.

        By: */s/ Robert F. Salkowski*
        **Robert F. Salkowski**